Mr. Justice Scott delivered the opinion of the court. As this was an action to recover from the executors of Den-ton, deceased, a sum of money, alleged to have been collected by their testator as an attorney at law, in December, 1841, and there was no evidence of any special demand for it until in the summer of 1847, the question to be decided is, whether or not the plea of the statute of limitations interposed by the executors was a bar to the recovery sought. It is conceded that the statute does not begin to run in any case until there is a com-píete and present cause of action. And it may be laid down as a correct general rule that, although the relation of trustee and cestui que trusty may impliedly exist, nevertheless the statute of limitations may in all such cases be plead as a bar where an action at law can be sustained; and that it is only in such cases of Fraud, Trust, &c., as are peculiarly and exclusively within the cognizance of equity where this defence cannot be claimed as a matter of right. Besides the two cases cited by the counsel for the defendants in error from 5 Cowen and 7 Wendell, there are two cases in 2 Arkansas Rep., one in 3 Ark. and one in 1 Eng., all sustaining the general rule contended for by him, that an action cannot be sustained against an attorney at law for money collected by him for his client, unless an authentic special demand and refusal to pay it over, or a refusal to remit after instructions, be shown to have occurred before action brought; and this is, without doubt, a correct general rule of law applicable to every case where the attorney has faithfully discharged his duties to his client, and is consequently in no default, and this is plainly indicated in two of the three cases cited by the court in Cummins vs. McLain & Badgett, 2 Ark. 412, where this general rule is first laid down by this court, and is the necessary result of the principle which they declare as at the foundation of the rule declared, which is that “ The attorney’s liability rests upon the principle of his agency for the plaintiff, and he holds the money for his principal in that capacity:” and to the identical purport are all the cases in the books, where the court go into the reason of the rule. In the case cited from 5 Cowen (that of Taylor vs. Bates 376) the Supreme Court of New York explicitly place it upon this ground, and cite the, case of Farris vs. Parris, 10 John. 255, which was the case of a consignee and factor as identical in principle. And in the case of Coffin vs. Coffin, 7 Greenl. R. 299, the Supreme Court of Maine rests the doctrine upon the same principle, saying in that case, “Indeed we are satisfied on further examination of this subject, that we are not authorized to’distinguish an attorney from any other agent.” Now among the duties imposed by law upon agents, is that of “keeping their principals apprised of their doings, and to give them notice within a reasonable time of all such facts and circumstances as maybe important to their interests.” (Story on Agency, p. 243, section 208, and the numerous authorities there cited). Accordingly, in the case of Ferris vs. Parris, 10 John. 285, cited by this court in Cummins vs. McLain & Badgett, where the consignee and factor, after making sales, apprised his principal by letter enclosing him an account of sales and authorizing him to draw upon him, after which he awaited further instructions; the Supreme Court of New York say, “before there had been any default or laches shown on the part of the defendants, and after repeated offers on their part to pay or remit according to order, the plaintiff commenced suit. The defendants in the character of consignees or factors were bound to pursue the directions of their principal, and after apprising him of the sale to wait for these directions. Until a default on their part, they were not liable to an action, and to support the action in the present case would be against the policy and usage of trade, as well as against justice and good faith.” And this was the case cited by the court in New York in the case of Taylor vs. Bates, 5 Cow. (which last named case was also cited by this court in the case of Cummins vs. McLain & Badgett) and was a case against an attorney for money collected by him as such for his client, where the court say “ The remaining inquiry is whether the defendant is liable to this action. The defendant was the attorney or agent of the plaintiff and held the money in that capacity. No laches are shown on the part of the defendant or unwillingness to pay. It does not appear that the plaintiff ever demanded payment or requested the money to be remitted. The offer to pay the balance to Southwick, Cannon and Warren, immediately after it it was due, shows a solicitude in the defendant to discharge himself from the trust. They were authorized to receive as well the plaintiff’s share as, their own, and refused to accept all that could be legally claimed. The defendant was not liable to an action. To support it would be in opposition to the nature of the trust the defendants hand assumed as well as against justice and good faith, until he had refused to pay or remit according to instructions. This case is analagous to that of Ferris vs. Parris, 10 John. 285) where it was held that a factor or consignee apprising his principal of the sale of goods consigned to him, may wait to receive instructions as to the mode of remitting thé nett proceeds, and is not liable to an action until default on his part in remitting or paying the proceeds according to the order of his principal.” And although the case of Rathburn vs. Aregalls, 7 Wend. 320, was decided with express reference to this case, it is manifest at a glance that in that case the court either lost sight of the facts of the case before them, or else of the doctrine of the case ostensibly relied upon, inasmuch as it mustbe admitted that the decision made was not authorized by the doctrine of Taylor vs. Bates. But in the subsequent case of Staffer vs. Richardson, 15 Wend. (which, although decided some four years before Cummins vs. McLain & Badgett, was not cited in that case) which was also an action against an attorney at .law to receive money collected by him as such for his client, Taylor and Bales was again cited and its doctrine again properly applied and lucidly explained, and the court say “Having received the plaintiff’s money he should either have remitted it to him, or given him notice of having received it, that the plaintiff might have called for it, or ordered it to be remitted. The defendant had actually remitted fifty dollars, as appears in this case, without waiting for orders for that purpose. Assuming that the defendant neglected to give information to his client, and having converted to his ow.n use his client’s money, why should he not be subjected to an action? It is said that in Taylor vs. Bates, 5 Cowen 376, it was decided that an attorney is not liable for money collected till demand or directions to remit; that he is not in default until he receives orders from his principal. What wás there said was correct in that case and in all similar cases. In that case, however, the defendant was not in default in respect to remittance; he had informed his principal of his receipt of the money and he waited for directions to remit. It is expressly said that “no laches are shown on the part of the defendant or unwillingness to pay,” can that be said in this case? Assuming, as we must, from the testimony that the defendant received the property of Genung and discharged his client’s debt, and neither gave information of the receipt of the money, nor remitted it to him for sixteen years, can it be said there were no laches? And yet this must be said to bring this case within the principle of the case, of Taylor vs. Bates. But if an attorney may shield himself from responsibility upon the ground that no demand has been made, it does not follow that the client can excuse his laches by a principle which is intended to protect from costs an agent who has acted honestly and diligently in the business of his principal Although the defendant may have been guilty of negligence in this case, which would have subjected him to a suit, the plaintiff also has been guilty of negligence by which in an ordinary case he would have lost his right of action. Although therefore an attorney may protect himself from a suit by want of a demand, he is not for that reason to be subject all his lifetime to demands, however stale. If a demand was necessary in this case, the plaintiff should have made it in season to have brought his suit within six years after the defendant had converted the property received by him to his own use. The conversion was made according to the testimony in the year 1815 or 1816. The plaintiff therefore should have brought his suit within six years from that time, and it is no excuse for him that he made no demand. It was his own fault that he had not put himself in a condition to sue, and he can never take advantage of his own laches. The idea of a trust is not applicable to a case like this; it is the simple case of an agent receiving the money of his principal, which the principal neglected to call for until the agent is protected by the statute of limitations.” So also in the Supreme Court of Maine, in the case of Staples vs. Staples, & Greenl. R. 553, where the question was whether money in the hands of an attorney collected for his client could be attached. It was objected that this could not be before demand made as the client himself had no action until this was done. But the court held that, even if this was so, the money could be attached because the statute authorized the attachment of a debt before it was due, and the remark of the court giving color to the validity of the objection urged, this was insisted upon as a previous decision. When the question afterwards came directly before the court of Maine in the case of Coffiin vs. Coffiin, 7 Greenl. R. 299, whether or not an action could be maintained against an attorney for money collected by him for his client before demand and refusal to pay or neglect to remit after instructions, and whether for want of such, the attorney could protect himself by the statute of limitations, and the court referring to what had been said in Staples vs. Staples, said that that case had gone off on the other point and that all that was said about previous demand and refusal to pay was mere dictum, and held, on the questions then before them, that an “Attorney was j not to be distinguished from other agents, and that an action, when he was in default, lay against him without special demand and refusal or neglect to remit after instructions, and that the statute of limitations run in his favor and that he might protect himself under its provisions. It would seem, therefore, to be clear not only upon principle but by these authorities that an attorney, to protect himself from a suit for money collected by him as such for his client, must within a reasonable time after receiving the money give notice, or make a reasonable effort to apprise his client of his having received it, and that when he has done this no action can be maintained against him for the money until after special demand and refusal to pay or neglect to remit after instructions to do so. And it will follow therefore that, if he is in default by a failure thus to discharge the general duty incumbent upon him to apprise his principal of all his acts and doings that may be of importance to his interests, in giving him notice or making a reasonable effort to do so within a reasonable time after receiving the money, he would be liable to an action for the money collected without special demand and refusal to pay, or neglect to remit after instructions, as under such circumstances he could not justly claim the shelter of the rule of law designed to protect those agents only who have acted honestly and diligently in the business of their principals. And that consequently in a case where a sufficient time has elapsed after such default, the statute of limitations would interpose a bar to an action for the money received as in every other case where an action has accrued, although the accrual of the action, as in every other case whatsoever, is by the wrong or default of the party against whom it accrues. Nor can it avail, in avoidance of the statute, that although the cause of action has accrued it was unknown to the plaintiff until after the lapse of the period of limitation. Whatever may be said of the hardship of such a case upon the ground that the accrual of the cause of action was peculiarly within the knowledge of the attorney, and in many cases scarcely accessible to the client from the distance between them or other circumstances, nevertheless the law is well settled otherwise, as was held in the case of Granger vs. George, 5 Barn. & Cres. 149 and recognized as law in the case of Wilcox et al. vs. The Ex’r of Plummer, 4 Peter’s R. 183, where it was held that mere want of knowledge, without any evidence of any fraud practiced by the defendant in order to prevent the plaintiff from obtaining knowledge of that which had been done, and where the court answer the objection of hardship by the remark that “ The plaintiff was certainly guilty of laches in not making inquiries respecting the property at an earlier period and has no ground of complaint that he is not now entitled to recover.” See also the cases of Short vs. McCarthy, 3 B. & A. 626. Brown vs. Howard, 2 B. & B. 73. Story on Con., p. 423, sec. 705. Bishop vs. Little, 3 Greenl. R. 405. Sherwood vs. Sutton, 5 Mason 146, whereby it seems that the plaintiff’s own laches place him within the pale of the law; the very silence of his agent for so great a length of time as the period of limitations would have long before put a prudent and diligent man upon inquiry — the law always favoring the diligent and discountenancing the slothful. And besides, it would be a gross perversion of a rule that was made to protect an honest and diligent agent to make it a means of annoyance as it would be if it was to subject him all his life and his wife and children after him to suits on stale demands, against which every other citizen is protected by the statute of limitations. Nor does it open a wide door for the practice of frauds by collecting agents upon their principals, as we have shown by the authorities quoted that the establishment of facts showing fraudulent concealment on their part of the cause of action would effectually displace the statute bar. And so far as attorneys at law are concerned as a class of collecting agents, it is next to impossible that the rule, as we have expounded it, can have any such effect, as besides the restraints upon them common to every • other class of collecting agents, the client has the paramonnt guarantee of an habitual reverence for a time-honored profession, which, in the history of jurisprudence, has been so rarely disgraced in the person of one of the profession who would forget his allegiance to the law and to the honorable association of the profession in pleading the statute unworthily, that scarcely one could be found in all the respectable walks of the profession who would be willing, even under the most trying temptation, to incur the withering pity and contempt of his brethren and the scorn of all good men for the sake of mere pecuniary gain. In this case it appears by one of the endorsements upon the execution, all of which were read in evidence without objection, that Denton was the purchaser of the house and lot levied upon and sold'for his client’s debt at the price of $1,000: and that, on the 6th day of December, 1841, the purchase money remained in his hands. The next day the execution was endorsed satisfied by the sheriff, and the same day a receipt in full was endorsed upon the execution by Denton as the attorney of the plaintiffs. And it does not appear that the plaintiff sought any information about their business until the spring of 1847, and as their letter of that date is one of inquiry merely of the subject matter of the claim, it affords a ground of inference that Denton had never advised them at all in the premises; but what may be the real facts as to this, we, of course, do not determine or intimate. Then, if any special demand was necessary, the plaintiffs should have made it in season to have brought their suit within three years after Denton had converted the property purchased at sheriff’s sale to his own use, and that conversion was shown to have been on the 6th December, 1841: therefore the suit should have been brought within three years from that time. If, however, he actually received the money for fyis clients, then a cause of action accrued to the plaintiffs so soon alter as a reasonable time should have elapsed, within which Denton should have apprised them of the receipt of the money to have saved himself from an action by giving information of the receipt of the money, or making a reasonable effort to do so; and as there is no evidence whatever of such information, or effort to give it, the statute of limitations in this view also run against the plaintiffs from a reasonable period for giving this information after the receipt of the money. If the plaintiff had no knowledge of his cause of action within the period of limitation, it was his own negligence, and the statute bars his action unless he can displace its bar by proof of fraudulent acts of Denton or his executors, which prevented his obtaining this knowledge — mere want of knowledge without fraud will not displace the bar. It is clear, therefore, that the Circuit Court erred in affirming the judgment of the Probate Court and refusing a trial de novo in that court, and as a trial de novo is the only object of prosecuting the appeal to this court, no other question legitimately arises on this record. And, for the error pointed out, the judgment of the court below must be reversed, and the cause remanded to be proceeded in with instructions to the Circuit Court to allow the plaintiff to reply to the statute of limitations, and try the case de novo.